FILED

12 MAR -5 AM 9:25

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY                              DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY L. MILLS,<br><br>                        Petitioner,<br><br>    vs.<br><br>CALIFORNIA DEPARTMENT OF<br>CORRECTIONS, et al.,<br><br>                        Respondents. | CASE NO. 10-cv-0610 BEN (WVG)<br><br>**ORDER:**<br><br>**(1) ADOPTING REPORT AND RECOMMENDATION OVER OBJECTIONS**<br><br>**(2) DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[Docket Nos. 13, 21] |

Petitioner Anthony Lee Mills, a state prisoner proceedings *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his San Diego County Superior Court conviction. (Docket No. 1.) Magistrate Judge William V. Gallo issued a thoughtful and thorough Report and Recommendation recommending that Petitioner's Petition for Writ of Habeas Corpus be denied. (Docket No. 13.) Petitioner filed an Objection to the Report and Recommendation. (Docket No. 21.) A district judge "may accept, reject, or modify the recommended disposition" of a magistrate judge on a dispositive matter. FED. R. CIV. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1). The court "shall make a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Having reviewed the matter de novo and for the reasons that follow, the Report is **ADOPTED** and the petition is **DENIED**.

1
## BACKGROUND[1]

2          On March 27, 2005, Petitioner drove to a restaurant to exchange custody of his two daughters

3   from a previous marriage. His ex-wife, Anitra Handy, and her husband, Eric Handy, were present.

4   An argument between Mr. Handy and Petitioner ensued. Petitioner said, "Come on, take a shot at me,"

5   and Mr. Handy tried to punch Petitioner, but missed. Petitioner attempted to shoot Mr. Handy, but his

6   gun did not fire. Petitioner fired the gun again, shooting Mr. Handy in the mouth. As Mr. Handy

7   turned away, Petitioner pointed the gun at the back of Mr. Handy's head and pulled the trigger, but the

8   gun did not fire.

9          On April 7, 2005, Petitioner was charged with one count of attempted murder in violation of

10  California Penal Code §§ 664, 187(a), and one count of assault with a semiautomatic firearm in

11  violation of California Penal Code § 245(b). The information alleged that Petitioner's conduct was

12  willful, deliberate, and premeditated within the meaning of Section 189, and that Petitioner personally

13  used a firearm in the commission of the felony or attempted felony (§§ 12022.5(a), 12022.53(b)),

14  discharged the firearm (§ 12022.53(c)), and thereby caused great bodily injury or death to a person

15  other than an accomplice (§ 12022.53(d)).

16         At trial commencing on May 15, 2006, Petitioner was represented by Deputy Public Defender

17  Marion Gaston. When ruling on the motions in limine, the court determined that Gaston would not

18  be allowed to introduce evidence of Mr. Handy's knife assault on a prison guard while serving a prison

19  sentence at Centinela State Prison. The court based its ruling on the prosecutor's misrepresentation

20  that Mr. Handy had never admitted to actually possessing a knife while at Centinela, but only admitted

21  to being found guilty of possession. The court stated it was willing to revisit the issue if Gaston could

22  verify that Mr. Handy admitted to actually possessing the knife. The misstatement to the court was

23  never corrected, as Petitioner changed his plea to guilty before the issue could be revisited.

24         On August 4, 2005, the trial court held a *Marsden*[2] hearing. After the *Marsden* hearing,

25  Petitioner waived his Sixth Amendment rights and elected to represent himself. On October 13, 2005,

26

27         [1] This Order adopts the factual findings of the Report, and only summarizes them here.

28         [2] Under *People v. Marsden*, 2 Cal. 3d 118 (1970), a California criminal defendant may request substitution of his appointed counsel and state his reasons to the trial court.

1  Petitioner requested assistance of counsel, and the court reassigned Gaston to represent Petitioner.

2  On May 18, 2006, Petitioner entered a change of plea to guilty for attempted murder (§§ 664,

3  187(a)), and admitted to personally using a handgun in the commission of the offense (§ 12022.53(b)).

4  On the prosecution's motion, the court dismissed the balance of the charges against Petitioner. Before

5  the change of plea hearing, Petitioner was given a night to discuss the situation with his wife, spiritual

6  advisor, and Gaston. At the hearing, the court verified that Petitioner had read and understood the

7  change of plea document.

8  On November 22, 2006, Petitioner moved to withdraw his plea under § 1018, claiming it was

9  unknowing and involuntary. The court denied this motion. On February 5, 2007, the court declined

10  to hear Petitioner's motion to reconsider the denial of his motion to withdraw his plea.

11  On July 27, 2006, Petitioner filed a petition for writ of habeas corpus in San Diego County

12  Superior Court, which the court denied. On February 9, 2007, the court sentenced Petitioner to a

13  prison term of 15 years, consisting of 5 years for attempted murder and a mandatory 10-year

14  enhancement for use of a firearm.

15  On March 28, 2007, Petitioner appealed the judgment and sought appointment of counsel. The

16  court appointed Deputy Alternative Public Defender Steven Walder. The court of appeal affirmed the

17  judgment on March 10, 2008. The court of appeal found that (1) the record supported the lower

18  court's finding that Petitioner's decision to accept the plea offer arose from his free judgment and a

19  thorough understanding of the implications of his plea, and (2) the record revealed by clear and

20  convincing evidence that Petitioner's decision to plead guilty was not the result of Gaston's alleged

21  incompetence.

22  On November 13, 2008, Petitioner filed a second petition for writ of habeas corpus in the San

23  Diego County Superior Court, which was denied on January 6, 2009. On February 18, 2009, Petitioner

24  petitioned for habeas corpus relief in the California Court of Appeal, raising the same claims he raised

25  in the superior court. On April 27, 2009, the petition was denied. On June 29, 2009, Petitioner raised

26  the identical claims before the California Supreme Court, which issued a silent denial.

27  On March 13, 2010, Petitioner filed the present Petition. On July 8, 2010, Respondent filed

28  an Answer. On September 9, 2010, Petitioner filed a Traverse.

1      **DISCUSSION**

2              As correctly outlined in the Report and Recommendation, federal habeas relief may only be

3      granted when state court proceedings: "(1) resulted in a decision that was contrary to, or involved an

4      unreasonable application of, clearly established Federal law, as determined by the Supreme Court of

5      the United States; or (2) resulted in a decision that was based on an unreasonable determination of the

6      facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The

7      Supreme Court has clarified that even an erroneous or incorrect application of clearly established

8      federal law does not support a habeas grant, unless the state court's application was "objectively

9      unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

10     **I.     GROUND ONE: INEFFECTIVE ASSISTANCE OF COUNSEL**

11             In his Petition, Petitioner contends that Gaston rendered ineffective assistance of counsel

12     because she (1) failed to investigate his case, (2) failed to interview key witnesses, and (3) failed to

13     obtain court-ordered discovery. In addition, Petitioner contends that Gaston had a conflict of interest

14     and that his conviction was invalid because it was based upon an unconstitutional deprivation of

15     effective assistance of counsel.

16             **A.     Failure to Investigate**

17             Petitioner argues that Gaston failed to conduct an investigation into Mr. Handy's violent past,

18     the evidence of which was essential to Petitioner's self-defense claim. Specifically, Petitioner argues

19     that it was not a sound tactical decision for Gaston to contact witnesses only once it was determined

20     that the case would proceed to trial.

21             The court of appeal concluded that Gaston "was prepared to present a claim of self-defense at

22     trial based on Mr. Handy's admissions of his violent past, and reasonably concluded that it was

23     unnecessary to call Mr. Handy's victims in order to prove his violent propensities." (Respondent's

24     Lodgment No. 6, at 13.) The Report and Recommendation found that the court of appeal's denial of

25     Petitioner's claim was not contrary to, nor an unreasonable application of, clearly established federal

26     law. Although Petitioner argues that the court of appeal's conclusion is "absurd" because "using that

27     logic, [the court would] find that the prosecution could have successfully proven its case without any

28     witnesses at all," (Obj. at 3), Petitioner does not cite any authority for the proposition that Gaston was

- 4 -

1  required to prove a claim of self-defense by presenting the testimony of Mr. Handy's prior victims.

2  As the Report and Recommendation found, Gaston thoroughly researched Mr. Handy's violent past

3  and was prepared to offer that evidence in support of Petitioner's claim of self-defense. Specifically,

4  Gaston reviewed the police reports for Mr. Handy's prior conduct, and was prepared to impeach Mr.

5  Handy by calling a district attorney investigator and a probation officer.

6              **B.     Failure to Interview Key Witnesses**

7          Petitioner argues that Gaston refused to conduct the necessary pretrial investigations and

8  interviews of witnesses that would have supported Petitioner's self-defense claim. Although Petitioner

9  does not identify these witnesses, the Report and Recommendation reasonably concludes that

10  Petitioner is referring to Ms. Mills two children, Shaniqua Johnson and Adrian Williams, and

11  Petitioner does not object to this conclusion.

12          As the Report and Recommendation explains, Gaston attempted to contact Johnson and

13  Williams both before and during trial. Gaston spoke with Williams prior to trial. In addition, Gaston

14  attempted to speak with Johnson about six weeks before trial, and would have made another attempt

15  had trial proceeded. Gaston believed that because of Petitioner's "volatile" relationship with Ms.

16  Mills, Ms. Mills made herself and her children unavailable for Petitioner's defense.

17          Moreover, Petitioner argues that Gaston's decision to not interview witnesses "was not born

18  from sound tactics, but rather, out of incompetence." (Obj. at 5.) The Report and Recommendation,

19  however, reasonably found that the court of appeal correctly concluded that Gaston's failure to

20  interview Johnson cannot be attributed to any error on Gaston's part. Gaston's decision not to call the

21  children to testify at trial was informed by an adequate review of these statements to the police, which

22  Gaston found problematic for Petitioner's self-defense claim because the statements were inconsistent

23  and the children would not appear truthful in front of the jury. This was a tactical decision that Gaston

24  discussed with Petitioner.

25              **C.     Failure to Obtain Discovery**

26          In his Petition, Petitioner claims that Gaston failed to obtain *Brady* materials favorable to the

27  Petitioner in support of his defense. Because Petitioner did not set forth any facts in support of this

28  claim in Ground One of his Petition, but rather in Grounds Three and Four, the Report and

1    Recommendation addressed this claim in its discussion regarding Ground Four.  Accordingly,
2    Petitioner's arguments will be considered below.

3                    **D.    Conflict of Interest**

4           Petitioner argues that there was a conflict of interest between him and Gaston because (1)
5    Petitioner was unable to communicate with Gaston, (2) Gaston rejected Petitioner's suggestions, (3)
6    Gaston lied to Petitioner, and (4) Gaston "threatened" Petitioner by vowing to get back on the case
7    when Petitioner attempted to replace her with alternative counsel.  Petitioner also argues that at the
8    *Marsden* hearing, it was determined that Gaston and Petitioner would not be able to effectively work
9    together.

10          The Report and Recommendation correctly found that Petitioner does not cite any evidence
11   of a conflict of interest, nor is there any evidence in the record.  *See Mannhalt v. Reed*, 847 F.2d 576,
12   579 (9th Cir. 1988) ("To establish a sixth amendment violation based on a conflict of interest the
13   defendant must show 1) that counsel actively represented conflicting interests, and 2) that an actual
14   conflict of interest adversely affected his lawyer's performance.").  In addition, at the *Marsden* hearing,
15   the trial court in fact found no "'basis upon which to assess counsel's performance as being deficient
16   in any respect.'" (R&R at 30 (quoting Respondent's Lodgment No. 2, Rptr. Tr. App. Vol. 1A, at 10).)

17                   **E.    Invalid Conviction**

18          Petitioner argues that his conviction was invalid because it was based upon an unconstitutional
19   deprivation of effective assistance of counsel.  Because the Court has concluded that the Report and
20   Recommendation correctly found that Petitioner was not deprived of effective assistance of counsel,
21   his claim that his conviction was invalid on that basis fails as well.

22                   **F.    Prejudice**

23          Petitioner argues that he was prejudiced by Gaston's ineffective assistance of counsel.  The
24   Report and Recommendation did not reach the issue of prejudice, however, because it determined that
25   Petitioner's counsel's representation did not fall below an objective standard of reasonableness.  As
26   the both factors are necessary to successfully prove a claim for ineffective assistance of counsel,
27   *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984), the Court need not reach the issue of
28   prejudice here.  Accordingly, the Court overrules Petitioner's objection.

1    **II.    GROUND TWO: JUDICIAL MISCONDUCT**

2          Petitioner argues that the trial court violated his Fourteenth Amendment right to due process

3    when it reappointed Gaston, who was previously removed in a *Marsden* hearing. The Report and

4    Recommendation found that the trial court's decision to reassign the Office of Public Defender—and

5    therefore Gaston—as Petitioner's counsel was reasonable in light of Gaston's thorough preparation

6    of the case and the court's finding that Petitioner's complaints of a conflict between himself and

7    Gaston were without merit.

8          Petitioner challenges the Report and Recommendation's finding that Petitioner's due process

9    rights were not violated by the trial court's reappointment of counsel "because the trial court

10   investigated Petitioner's complaints and reasonably found no basis to remove Gaston as counsel."

11   (R&R at 31.) First, Petitioner argues that the trial court's finding was "biased," because it was based

12   on Gaston's "self-serving statements." (Obj. at 9.) As the Report and Recommendation found,

13   however, the trial court carefully considered Petitioner's arguments, and reasonably decided to

14   reappoint Gaston. In addition, Petitioner does not cite any authority suggesting that the court may not

15   consider statements made by counsel when deciding whether to reassign counsel.

16         Second, Petitioner argues that the trial judge improperly based his ruling at the *Marsden*

17   hearing on courtroom observations. Petitioner cites *People v. Marsden* for the proposition that "a

18   judge who denies a motion for substitution of attorneys solely on the basis of his courtroom

19   observations, despite a defendant's offer to relate specific instances of misconduct, abuses the exercise

20   of his discretion to determine the competency of the attorney." 2 Cal. 3d 118, 124 (1970). *Marsden*

21   continues, however, that "[a] judicial decision made without giving a party an opportunity to present

22   argument or evidence in support of his contention is lacking in all the attributes of a judicial

23   determination." *Id.* (internal quotation marks omitted). The present case is not an instance in which

24   Petitioner did not have "an opportunity to present argument or evidence in support of his contention."

25   As the Report and Recommendation noted, the trial court held a *Marsden* hearing in which it allowed

26   Petitioner to "fully air his complaints." (R&R at 33.) The trial judge did not improperly deny

27   Petitioner's motion based solely on his courtroom observations.

28         Third, Petitioner objects to the Report and Recommendation's application of *Wheat v. United*

- 7 -

10cv0610

1  *States*, 486 U.S. 153, 159 (1988) ("[I]n evaluating Sixth Amendment claims, the appropriate inquiry

2  focuses on the adversarial process, not on the accused's relationship with his lawyer as such." (internal

3  quotation marks omitted)).    Petitioner argues that "the Magistrate Judge's citing of *Wheat* is

4  unreasonable in its application" because "[t]he cumulative effect of counsel's deficient performance

5  so devistated [sic] the adversarial process that it rendered it nonexistent." (Obj. at 10.) As explained

6  above, however, Gaston's representation did not fall below an objective standard of reasonableness

7  and did not adversely affect the adversarial process.    Accordingly, the Court overrules Petitioner's

8  objection.

9      **III.    GROUND THREE: JUDICIAL MISCONDUCT**

10         Petitioner argues that the trial court violated his due process rights when it allowed ex parte

11  contact between the prosecution and Gaston.    Specifically, Petitioner argues that the trial court

12  improperly granted the prosecution's request for an ex parte "off the calendar" meeting with Gaston

13  in order to provide Gaston with court-ordered discovery. (Pet. at 41.)  In addition, Petitioner claims

14  that the court vacated a discovery hearing set for October 24, 2005, in effect suppressing court-ordered

15  *Brady* materials and providing an unfair advantage to the prosecution.

16         The Report and Recommendation correctly found that no ex parte communications occurred

17  here, as there is no evidence that the trial judge had an ex parte communication with either the

18  prosecution or Gaston.    An ex parte communication is one between counsel and the court when

19  opposing counsel is not present. *See* BLACK LAW'S DICTIONARY 616 (8th ed. 2004) (defining "ex

20  parte" as "[d]one or made at the instance and for the benefit of one party only, and *without notice to*,

21  or argument by, any person adversely interested" (emphasis added)).    Petitioner's argument that the

22  "off the calendar" meeting was ex parte because the prosecution was the only party who benefitted

23  from it is unavailing, as this alone does not constitute an ex parte communication.

24         Petitioner argues that (1) the court of appeal never concluded that there was no evidence of ex

25  parte communications, and (2) Gaston agreed to vacate the hearing in which discovery was to be

26  turned over to Gaston, and Petitioner was not present when Gaston agreed to vacate the hearing and

27  was not aware that it was vacated.  Neither of these arguments, however, challenge the correctness of

28  the Report and Recommendation's conclusion that there is no evidence of an ex part communication

1   on the record. In addition, Petitioner does not cite any authority that would suggest that Gaston did

2   not have the authority to agree to vacate the hearing. Accordingly, the Court overrules Petitioner's

3   objection.

4   **IV.    GROUND FOUR: PROSECUTION'S WILLFUL WITHHOLDING OF COURT-ORDERED**

5   **DISCOVERY**

6   Petitioner contends that the prosecution violated Petitioner's Fourteenth Amendment due

7   process rights by failing to comply with a September 30, 2005 court order requiring disclosure of all

8   *Brady* materials—consisting of Mr. Handy's state prison records—favorable to Petitioner.

9   The Report and Recommendation found that (1) Petitioner does not cite any evidence

10  supporting his contention that the prosecution failed to comply with the stipulation of the parties at the

11  September 30, 2005 hearing that any "SDT" [subpoena duces tecum] records received may be released

12  to the district attorney for copying and distribution to both sides only, (2) to the extent Petitioner is

13  claiming that the prosecution failed to comply with court-ordered discovery, a federal court may not

14  reexamine state-court determinations on state-law questions in habeas cases, and (3) there was no

15  *Brady* violation here because the prosecution did not possess Mr. Handy's prison records and the

16  allegedly exculpatory information in the prison records was already known to the defense.

17  First, Petitioner argues that "[t]he Magistrate Judge admits that the prosecution's

18  'misrepresentation' concerning the victim's violent prison record led to the trial court's erroneous

19  ruling concerning the inadmissibility of the victim's knife assault on a prison guard." (Obj. at 13.)

20  According to Petitioner, the prosecution was required to correct the error and disclose the full court-

21  ordered *Brady* materials to the defense once the error was discovered. Whether evidence is admissible,

22  however, has no bearing on the prosecution's duty to disclose the evidence to the defense under *Brady*.

23  Second, Petitioner argues that the Report and Recommendation attempts to "shift blame" from

24  the prosecution to Gaston and Petitioner, by reasoning that "the defense already knew about the

25  'allegedly exculpatory information in the prison records.'" (Obj. at 14 (quoting R&R at 39).) The

26  Supreme Court has established, however, that disclosure is not required under *Brady* if the defendant

27  knew or should have known of the essential facts permitting the defendant to take advantage of the

28  exculpatory evidence. *Raley v. Ylst*, 470 F.3d 792, 804 (9th Cir. 2006). The Report and

1  Recommendation is correct that no *Brady* violation occurred, in part because the allegedly exculpatory

2  information in the prison records was already known to the defense.

3        Third, Petitioner argues that the Report and Recommendation incorrectly concluded that there

4  was no *Brady* violation because it did not consider that other "agents," the California Parole

5  Department, and the police knew of Mr. Handy's violent history described in the prison records. It is

6  true that "[e]xculpatory evidence cannot be kept out of the hands of the defense just because the

7  prosecutor does not have it, where an investigating agency does." *United States v. Blanco*, 392 F.3d

8  382, 388 (9th Cir. 2004) (internal quotation marks and citations omitted); *see also Jackson v. Brown*,

9  513 F.3d 1057, 1073 (9th Cir. 2008) (a *Brady* violation occurs where the suppressed evidence is

10  known only to police investigators); *Kyles v. Whitley*, 514 U.S. 419, 438 (1995) (same).  Here,

11  however, there is no evidence that other "agents," the California Parole Department, or the police had

12  possession of Mr. Handy's prison records. In fact, the record shows that neither Gaston nor the

13  prosecution were able to obtain Mr. Handy's prison records despite subpoenas and numerous

14  telephone calls to prison authorities. (Respondent's Lodgment No. 2, Rptr. Tr. App. Vol. 3, at 73-74.)

15        Fourth, Petitioner argues that this is an issue of "constitutional federal law," rather than state

16  law, citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), and 28 U.S.C. § 2241. (Obj. at 17.) Section

17  2241(c), however, mandates that "[t]he writ of habeas corpus shall not extend to a prisoner unless . . .

18  [h]e is in custody in violation of the Constitution or laws or treaties of the United States." Similarly,

19  *Estrelle* stands for the proposition that "it is not the province of a federal habeas court to reexamine

20  state-court determinations on state-law questions. In conducting habeas review, a federal court is

21  limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United

22  States." 502 U.S. at 67-68.  Accordingly, the Report and Recommendation properly determined that

23  whether the prosecution failed to comply with court-ordered discovery is a question of state law, which

24  a federal habeas court may not entertain.

25        Fifth, Petitioner argues that the alleged *Brady* violation was material, because Petitioner would

26  have proceeded to trial if he had been in possession of Mr. Handy's prison records. As the Court has

27  determined that no *Brady* violation occurred here, it need not reach the issue of materiality.

28  Accordingly, the Court overrules Petitioner's objection.

V.   **GROUND FIVE: JUDICIAL MISCONDUCT**

Petitioner contends that the trial court engaged in judicial misconduct by depriving Petitioner of effective representation. Specifically, Petitioner argues that by overlooking Gaston's ineffectiveness and the conflict of interest between her and Petitioner, the court violated Petitioner's rights of due process and effective assistance of counsel.

Because the Court has concluded that the Report and Recommendation correctly found that Petitioner was not deprived of effective assistance of counsel and the trial court did not deprive Petitioner of his right to effective counsel by reappointing Gaston to represent him, his claim that the trial court engaged in judicial misconduct fails on those grounds as well. Accordingly, the Court overrules Petitioner's objection.

VI.   **GROUND SIX: CONSTITUTIONALITY OF GUILTY PLEA**

Petitioner contends that his guilty plea is constitutionally infirm because he entered into it involuntarily, out of fear that he would not receive a fair trial. The court of appeal found that the record supported the trial court's determination that Petitioner's plea was knowing, intelligent, and voluntary. (Respondent's Lodgment No. 6, at 17.) The Report and Recommendation found that the court of appeal's denial of Petitioner's claim was not contrary to, nor an unreasonable application of, clearly established federal law.

Petitioner argues that the Report and Recommendation misinterpreted the circumstances surrounding his acceptance of the plea agreement. Specifically, Petitioner argues that "Petitioner was so set against the thought of pleading guilty to an offense he did not commit and that he knew evidence existed to dispute the charges that he needed 24 hours and three separate individuals to pursuade [sic] him to 'voluntarily' change his plea." (Obj. at 19 (internal quotation marks omitted).) The Report and Recommendation, however, presents a thorough and detailed analysis of the circumstances surrounding Petitioner's acceptance of plea agreement, which supports the conclusion that Petitioner entered his plea knowingly and voluntarily.

In addition, Petitioner's argument that his plea agreement was involuntary due to ineffective assistance of counsel fails, as the Court has already determined that Petitioner's counsel provided effective assistance. Similarly, Petitioner's argument that his due process rights were violated when

- 11 -

1   (1) the prosecution withheld *Brady* materials and (2) the trial court failed to enforce its order to

2   produce *Brady* materials fails, as the Court already determined that no *Brady* violation occurred.

3   Accordingly, the Court overrules Petitioner's objection.

4       **VII.   REQUEST FOR AN EVIDENTIARY HEARING**

5       Petitioner requests an evidentiary hearing.  To be granted an evidentiary hearing, Petitioner is

6   required to "allege specific facts which, if true, would entitle him to relief." *Ortiz v. Stewart*, 149 F.3d

7   923, 934 (9th Cir. 1998) (internal quotation marks omitted).   Petitioner has failed to do so.

8   Accordingly, his request for an evidentiary hearing is denied.

9       **VIII.   CERTIFICATE OF APPEALABILITY**

10       "The district court must issue or deny a certificate of appealability when it enters a final order

11   adverse to the applicant." Rule 11 foll. 28 U.S.C. § 2254.  A certificate of appealability is authorized

12   "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

13   § 2253(c)(2).

14       When a petitioner's claims have been denied on their merits, as here, a petitioner can meet the

15   threshold "substantial showing of the denial of a constitutional right" by determining that "the issues

16   are debatable among jurists of reason; that a court could resolve the issues in a different manner; *or*

17   *that the questions are adequate to deserve encouragement to proceed further.*" *Lambright v. Stewart*,

18   220 F.3d 1022, 1024-25 (9th Cir. 2000) (internal quotation marks and alteration omitted).  The Court

19   **DENIES** a certificate of appealability because the issues are not debatable among jurists of reason,

20   the Court could not resolve the issues in a different manner, and there are no questions adequate to

21   deserve encouragement.

22                  **CONCLUSION**

23       After a de novo review, the Court fully **ADOPTS** Judge Gallo's Report.  Petitioner is not

24   entitled to habeas relief and his Petition is **DENIED**.  The Clerk shall close the file.

25       **IT IS SO ORDERED.**

26

27   DATED: March ____, 2012

28                             HON. ROGER T. BENITEZ
                          United States District Court Judge